UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEVERLY BICA,<br><br>                    Plaintiff/Counter-Defendant,<br><br>v.<br><br>GENWORTH LIFE INSURANCE COMPANY,<br><br>                    Defendant/Counter-Claimant. | Case No.:  3:24-cv-01123-L-AHG<br><br>**REPORT AND RECOMMENDATION FOR ORDER GRANTING IN PART DEFENDANT'S MOTION FOR TERMINATING SANCTIONS**<br><br>**[ECF No. 63]** |

Before the Court is Defendant/Counter-Claimant Genworth Life Insurance Company's ("Defendant") Motion for Sanctions. ECF No. 63. Defendant seeks a court order imposing terminating sanctions or evidentiary sanctions against Plaintiff/Counter-

1

Defendant Beverly Bica ("Plaintiff" or "Ms. Bica"). ECF No. 63. For the reasons outlined below, the Court **RECOMMENDS** that the District Judge **GRANT IN PART** the motion for sanctions.

## I.   BACKGROUND

In her complaint, Plaintiff seeks reinstatement of her long-term care insurance policy (the "Policy"); payment for the period of time that she was without coverage; and damages of over $32,000,000.00. *See* ECF No. 1; ECF No. 63 at 7. The complaint is premised on Plaintiff's allegation that Defendant wrongfully terminated her Policy while she was hospitalized for serious injuries and unable to respond to Defendant's request for information. ECF No. 1 at ¶¶ 9–11.

Defendant asserts counterclaims against Plaintiff for declaratory relief that the Policy is terminated and that nothing is owed to her under the Policy; declaratory relief that the Policy is void due to fraud in insurance claims; fraud; and restitution of benefits wrongly paid. *See* ECF No. 15. The counterclaim is premised on Defendant's allegation that it rightfully terminated the Policy and because Plaintiff had submitted fraudulent invoices for reimbursement under the Policy. *Id*. at ¶¶ 45–55.

The parties' claims present many factual disputes. One overarching dispute is whether Plaintiff was eligible for benefits. Plaintiff alleges that she was eligible for benefits under her Policy because she was severely cognitively impaired and required substantial assistance with at least two activities of daily living. *See* ECF No. 56-1 at 44 (interrogatory response, asserting that "Ms. Bica suffered from dementia, combined with the effects of her past traumatic brain injuries, ADHD, and other medical conditions, Ms. Bica would always require home care for assistance with activities of daily living and for the sake of her safety and well-being"); *Id*. at 45 (interrogatory response, asserting that Ms. Bica "will always continue to meet the eligibility requirements for benefit payments under the Policy. At all relevant times, Ms. Bica has been Chronically Ill, is unable to perform two or more ADLs without substantial assistance, and requires substantial supervision to protect herself from threats to health and safety due to her severe cognitive impairment"). Defendant

contends that Ms. Bica "was neither so impaired nor needed such assistance and further, that Ms. Bica fraudulently submitted invoices claiming that she needed such assistance[.]" ECF No. 56 at 2–3. Defendant sought written discovery from Plaintiff regarding those topics.[1] Defendant also sought to take Plaintiff's deposition and have a neuropsychologist take an Independent Medical Examination ("IME") of Plaintiff.

As discussed in detail below, Plaintiff has refused to communicate with her counsel for over eight months; has refused to respond to, verify, and supplement her written discovery, even after being ordered to do so; repeatedly failed to appear for her deposition; and repeatedly failed to appear for her IME. On January 12, 2026, Defendant filed the instant motion for terminating sanctions. ECF No. 63. Plaintiff's counsel submitted an Opposition to the motion on February 13, 2026, and Defendant filed its Reply on February 23, 2026. ECF Nos. 68, 69.[2] The Court held an in-person hearing on March 9, 2026. ECF No. 72 (Plaintiff's counsel and Defendant's counsel were in attendance, and Ms. Bica's non-appearance was noted on the record). On March 17, 2026, the District Judge denied Plaintiff's counsel's renewed motion to withdraw. ECF No. 79. This Report and Recommendation follows.

---

[1] Written discovery propounded on Plaintiff can be summarized as follows: (1) documents relating to the Policy and claim; (2) identities of caregivers and persons with knowledge of facts relevant to the lawsuit; (3) Ms. Bica's caregivers' services, schedules, and payments; (4) Ms. Bica's residences and travel history; (5) Ms. Bica's phone and email providers and accounts; (6) Ms. Bica's social and physical activities; (7) Ms. Bica's banking, credit card, and payment information; and (8) a description of Ms. Bica's efforts to schedule a benefit-eligibility assessment. ECF No. 56 at 3–4.

[2] On March 16, 2026, pursuant to the Court's order during the hearing, Defendant filed a notice regarding whether Plaintiff complied with the March 13, 2026, deadline set forth in the order granting the motion to compel. ECF No. 76; *see* ECF No. 72. To be clear, "the Court did not permit Defendant to file a surreply regarding its motion for terminating sanctions. To the extent that any argument goes beyond the requested notice, it will not be considered by the Court in its forthcoming Report and Recommendation." ECF No. 77.

3:24-cv-01123-L-AHG

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 37[3] "authorizes the district court, in its discretion, to impose a wide range of sanctions when a party fails to comply with the rules of discovery or with court orders enforcing those rules." *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983). If a party fails to appear for her deposition, the court may issue an order dismissing the action. FED. R. CIV. P. 37(d)(3) (citing FED. R. CIV. P. 37(b)(2)(A)(v)). Likewise, if a party "fails to obey an order to provide or permit discovery," the court may dismiss the action in whole or in part. FED. R. CIV. P. 37(b)(2)(A)(v). A finding that a discovery order has been violated "is entitled to considerable weight" because the presiding judge is "best equipped to assess the circumstances of non-compliance." *Payne v. Exxon Corp.*, 121 F.3d 503, 507 (9th Cir. 1997).

Under both Rule 37 and the Court's inherent authority,[4] terminating sanctions should be imposed only in circumstances where the violation is "due to willfulness, bad faith, or fault of the party." *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d

---

[3] The Court notes that Federal Rule of Civil Procedure 41 and Civil Local Rule 83.1 also provide grounds to dismiss an action. FED. R. CIV. P. 41(b) ("If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it."); CivLR 83.1 ("Failure of counsel, or of any party, to comply with these rules, with the Federal Rules of Civil [] Procedure, or with any order of the Court may be grounds for imposition by the Court of any and all sanctions authorized by statute or rule or within the inherent power of the Court, including, without limitation, dismissal of any actions, entry of default, …"); *see Musgrove v. Hanifin*, No. 20-cv-614-JO-BLM, 2023 WL 4833479, at *5 (S.D. Cal. Jul. 27, 2023) (thoroughly explaining legal standards regarding dismissal). Here, however, Defendant solely seeks terminating sanctions pursuant to Federal Rule of Civil Procedure 37 and the court's inherent authority, (*see* ECF No. 63 at 12), so the Court need not address the other avenues. The Court notes, though, that the "standards governing dismissal [under Rule 37 and Rule 41] are basically the same[.]" *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130 (9th Cir. 1987).

[4] "It is firmly established that the courts have inherent power to dismiss an action or enter a default judgment to ensure the orderly administration of justice and the integrity of their orders." *Phoceene Sous-Marine, S.A. v. U.S. Phosmarine, Inc.*, 682 F.2d 802, 806 (9th Cir. 1982).

1091, 1096 (9th Cir. 2007). Once the court has found that a party engaged in willful misconduct, the court then determines whether terminating sanctions are appropriate by utilizing a five-factor test: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. *Computer Task Grp., Inc. v. Brotby*, 364 F.3d 1112, 1115 (9th Cir. 2004) (citing *Malone*, 833 F.2d at 130); *see Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 n.4 (9th Cir. 2006) ("Although this five-factor test is usually used to review the propriety of Rule 37 sanctions, this same test was applied in *Anheuser-Busch*[5] to review sanctions granted under a court's inherent power").

This is not a "mechanical" test, but rather is intended to help a district court "think about what to do." *Connecticut Gen. Life Ins. Co.*, 482 F.3d at 1096. Terminating sanctions may be warranted "where at least four factors support dismissal or where at least three factors strongly support dismissal." *Dreith v. Nu Image, Inc.*, 648 F.3d 779, 788 (9th Cir. 2011). "The most critical factor to be considered in case-dispositive sanctions is whether 'a party's discovery violations make it impossible for a court to be confident that the parties will ever have access to the true facts.'" *Connecticut Gen. Life Ins. Co.*, 482 F.3d at 1097 (internal quotation omitted); *see Valley Eng'rs Inc. v. Electric Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998) (when considering terminating sanctions, factors three and five "are decisive").

## III.    DISCUSSION

The Court will assess, through the five-factor test, whether terminating sanctions are proper as they relate to Plaintiff's complaint and Defendant's counterclaim.

//

//

---

[5] *Anheuser-Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995).

3:24-cv-01123-L-AHG

### A.    Plaintiff's Failure to Meet her Discovery Obligations and Comply with the Court's Order has been Willful and Deliberate

As a threshold consideration, the Court must first find that Plaintiff's noncompliance was due to willfulness, bad faith, or fault, to impose the sanction of dismissal under Rule 37. *Sanchez v. Rodriguez*, 298 F.R.D. 460, 463 (C.D. Cal. 2014). "Disobedient conduct not shown to be outside the control of the litigant is sufficient to demonstrate willfulness, bad faith, or fault." *Hyde & Drath v. Baker*, 24 F.3d 1162, 1167 (9th Cir. 1994). Willfulness, bad faith, or fault "does not require wrongful intent" or any particular mental state. *Sanchez*, 298 F.R.D. at 463. "A single willful violation may suffice depending on the circumstances." *Musgrove*, 2023 WL 4833479, at *6 (quoting *United States v. Approximately $30,000.00 in U.S. Currency*, No. 1:13-cv-1542-GSA, 2015 WL 5097707, at *8 (E.D. Cal. Aug. 28, 2015)).

Here, Ms. Bica has not communicated with her counsel since August 8, 2025, despite extensive efforts to reach her. ECF No. 68 at 2 ("Plaintiff has failed to respond to any communications from counsel, including emails, telephone calls, text messages, Zoom meetings, Federal Express deliveries, certified mail, and personal service."). As conceded by her counsel, Ms. Bica "has not participated in discovery, and has not communicated any intent to proceed with this litigation." *Id*.; *see id.* at 3 ("discovery failures … stem from Plaintiff's unilateral refusal to communicate or participate despite extensive notice and opportunity"). Due to Ms. Bica's stonewalling of all communication, she failed to appear for her original and rescheduled deposition, failed to appear for her original and rescheduled IME, and failed to comply with this Court's order compelling her to respond to, verify, and supplement her discovery responses.

Specifically, on August 25, 2025, Defendant served Plaintiff with a Notice of IME, set to take place on September 25, 2025, at 10:30 a.m. ECF No. 63-1 at 31–32. On September 8, 2025, Plaintiff's counsel advised Defendant's counsel and the Court via email that Ms. Bica had not confirmed that she would appear at the IME. *Id*. at 44. Given Ms. Bica's anticipated nonappearance, shortly before September 25, 2025, Defendant

alerted the neuropsychologist retained to conduct the examination and postponed the IME. ECF No. 78 at 4.

On September 9, 2025, Defendant served Plaintiff with a Notice of Deposition, set to take place on October 14, 2025, at 9:00 a.m. ECF No. 63-1 at 49–50. The day before the deposition, on October 13, 2025, Plaintiff's counsel advised Defendant's counsel and the Court via email that Ms. Bica had not confirmed that she would appear at the deposition and asked for it to be postponed. *Id*. at 53, 57–58. On October 13, 2025, the Court declined to stay the deposition but warned counsel that it would not award costs if Plaintiff failed to appear. *Id*. at 56. On October 14, 2025, Plaintiff's counsel advised Defendant's counsel via email that they still had not heard from Ms. Bica and did not know whether she would appear for the deposition that was currently underway. *Id*. at 61. Defendant's counsel appeared at the deposition. Ms. Bica did not appear, and the court reporter documented her non-appearance. *Id*. at 67–68.

On December 5, 2025, Defendant served Plaintiff with another Notice of IME, set to take place on January 22, 2026, at 10:30 a.m., with a confirm-by date of December 22, 2025. ECF No. 63-1 at 82–83. Plaintiff's counsel emailed Defendant's counsel on December 22, 2025, to advise that they had not received any response from Ms. Bica about her intent to appear at the IME. *Id*. at 90. Since Plaintiff had not confirmed her intent to attend the IME, Defendant notified the doctor and canceled the IME in advance. ECF No. 78 at 5.

On December 5, 2025, Defendant served Plaintiff with another Notice of Deposition, set to take place on January 13, 2026, at 9:00 a.m., with a confirm-by date of December 22, 2025. ECF No. 63-1 at 85–87. Plaintiff's counsel emailed Defendant's counsel on December 22, 2025, to advise that they had not received any response from Ms. Bica about her intent to appear at the deposition. *Id*. at 90. Since Plaintiff had not confirmed her intent to appear at her deposition, Defendant took the deposition off calendar. ECF No. 78 at 5–6.

3:24-cv-01123-L-AHG

On February 27, 2026, the Court granted in part Defendant's motion to compel. ECF No. 71. The Court ordered Plaintiff to serve supplemental responses and document productions to Defendant's first set of interrogatories and requests for production, verify responses to Defendant's second set of interrogatories, and serve responses and document productions to Defendant's third set of interrogatories and requests for production by March 13, 2026. *Id*. at 6. On March 16, 2026, Defendant confirmed that it "received no supplemental responses, no verified interrogatory answers, and no production of documents from Ms. Bica in response to or in compliance with this Court's Order."[6] ECF No. 76 at 2.

Despite refusing to participate in this case, however, Ms. Bica has participated in other cases during the same timeframe. For example, Ms. Bica filed a lawsuit, *pro se*, in San Diego Superior Court on November 24, 2025—two weeks before Defendant filed its December 10, 2025, motion to compel. *See Bica v. Koch*, No. 25CU063018C (San Diego Super. Ct.) (available at https://odyroa.sdcourt.ca.gov/cases/). In that case, Ms. Bica appeared via videoconference on December 18, 2025—four days before her rescheduled deposition's and IME's confirm-by date of December 22, 2025, in the instant matter—for a hearing before San Diego Superior Court Judge Blair Soper. ECF No. 63-1 at 125. Ms. Bica also appeared via videoconference on December 19, 2025—three days before the December 22, 2025, confirm-by date for her rescheduled deposition and IME in the instant matter—for a hearing in *Stouthart v. Bica*, Case No. 25HR063525C, before Judge Soper. *Id*. at 122. Additionally, Defendant has submitted additional items that show Ms. Bica was able to communicate during the time period of her original IME and deposition, which

---

[6] The Court notes that it received a voicemail from an unidentified caller on March 9, 2026, stating that Ms. Bica "won't be able to respond [to the order granting the motion to compel] by March 13." ECF No. 73. Court staff returned the call and informed the caller that requests for continuances must follow the appropriate court procedures, but Ms. Bica made no attempts to formally request a continuance thereafter. *See id*. The Court notes that this voicemail confirms that Ms. Bica received the Court's Order, (ECF No. 71), and was aware of the deadline.

were noticed on August 25, 2025, and September 9, 2025, respectively. *See, e.g.*, *id*. at 93–96 (Ms. Bica's public Facebook page,[7] showing posts and comments she made on and around September 11, 2025).

Here, Ms. Bica's refusal to engage in the discovery process "demonstrates a willful disregard for discovery rules and court orders." *Chase v. International Ass'n of Machinists & Aerospace Workers*, No. 2:20-cv-08841-ODW-SK, 2022 WL 2052657, at *3 (C.D. Cal. Apr. 8, 2022) (collecting cases where courts found violations of discovery orders to be willful); *see U.S. Equal Emp. Opportunity Comm'n v. ABM Indus. Inc.*, No. CV-F-07-1428-LJO-BAK, 2009 WL 1287757, at *4 (E.D. Cal. May 7, 2009) (finding that violation of a court order was willful where plaintiffs refused to appear for their depositions, reasoning that plaintiffs "controlled whether they could appear for their depositions and chose not to do so. As this point, they seek to hijack the discovery process and rightful decision of their claims until they apparently decide when they want to participate"); *cf. Sanchez*, 298 F.R.D. at 463–64, 470–71 (finding willful noncompliance where *pro se* plaintiff ignored defendant's discovery requests and the court's subsequent order granting the motion to compel).

Considering the aforementioned, it is clear that Plaintiff has intentionally and willfully refused to participate in the discovery process. *See Musgrove*, 2023 WL 4833479, at *6 ("The evidence clearly establishes that Plaintiff acted, or more accurately failed to act, knowingly, intentionally, and willfully"). Thus, the Court finds that the "willfulness, bad faith, or fault" prerequisite to dispositive sanctions has been satisfied. *See Bump Babies Inc. v. Baby The Bump Inc.*, No. 09-06747-GHK-SSx, 2011 WL 5037070, at *5 (C.D. Cal.

---

[7] Upon further independent review of Ms. Bica's public Facebook page, the Court notes her public post from March 24, 2026—less than two weeks after the missed March 13, 2026, response deadline imposed by the Court's order on the motion to compel—which shared photos from, and a tagged location of, Scripps Coastal Preserve and her dog with the caption, "Stunning day, isn't it?" *See* BEVERLY BICA, FACEBOOK, https://www.facebook.com/beverlybica (last visited May 3, 2026).

3:24-cv-01123-L-AHG

Sept. 7, 2011) ("Defendant possessed the ability to comply with Plaintiffs' discovery requests and the Court's orders, but chose not to do so. Such actions were entirely within her control. As such, she acted willfully").

### B. The Public's Interest in Expeditious Resolution of Litigation Favors Dismissal

The first factor, the public's interest in the expeditious resolution of litigation, likewise favors dismissal. *Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002). The public has an "overriding interest in securing 'the just, speedy, and inexpensive determination of every action.'" *Allen v. Bayer Corp.* (*In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*), 460 F.3d 1217, 1227 (9th Cir. 2006) (quoting FED. R. CIV. P. 1). Here, Plaintiff has consistently refused to litigate her case for approximately eight months. *See Alexis v. Rogers*, No. 15-cv-691-CAB-BLM, 2017 WL 1967328, at *4 (S.D. Cal. May 12, 2017) (finding first factor favored dismissal when the plaintiff "refused to litigate her case," and ultimately recommending terminating sanctions when plaintiff "repeatedly has failed to appear for her continued deposition, submit to an IME, and supplement her discovery responses").

Plaintiff's continued refusal to respond to discovery, despite a Court-order compelling her to do so, and her repeated refusal to appear for a deposition or IME "hinders the Court's ability to move this case towards disposition." *Obeng-Amponsah v. Don Miguel Apts.*, No. 5:16-cv-01054-PA-AFMx, 2021 WL 2980220, at *6 (C.D. Cal. May 17, 2021). Thus, Plaintiff's actions—her conscious inaction—"shows that Plaintiff does not intend to litigate this action diligently and in accordance with court rules and orders." *Id*. Thus, in light of Plaintiff's refusal to participate in this case, "the public's interest would best be served by dismissal[.]" *Alexis*, 2017 WL 1967328, at *5; *see Pagtalunan*, 291 F.3d at 642 (finding that plaintiff's "failure to pursue the case for almost four months" weighed in favor of dismissal).

//
//

As such, the Court finds that this factor favors dismissal. *See also Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990) ("Where a court order is violated, the first two factors support sanctions").

### C.   The Court's Need to Manage its Dockets Favors Dismissal

The court's need to manage its dockets also favors dismissal. *Stars' Desert Inn Hotel & Country Club, Inc. v. Hwang*, 105 F.3d 521, 524 (9th Cir. 1997). Here, Plaintiff's decision to ignore the discovery process and disregard the Court's February 27, 2026, order interferes with the Court's ability to manage the case and move it toward disposition. *See, e.g., Velasquez v. Lowe's Home Centers*, No. 5:24-cv-00609-SSS-MBK, 2025 WL 4113076, at *3 (C.D. Cal. Oct. 16, 2025) (finding first and second factor met when plaintiff refused to respond to discovery or appear for her deposition, violating the court's order, which "delayed resolution of the case"); *Alexis*, 2017 WL 1967328, at *5 (finding second factor met when plaintiff refused to respond to discovery, appear for her deposition, or appear for her IME); *see also Computer Task Grp., Inc.*, 364 F.3d at 1115 ("Where a court order is violated, the first and second factors will favor sanctions").

Further, Plaintiff's refusal to participate in discovery necessitated extensions of discovery deadlines, (*see* ECF No. 37 at 2; ECF No. 42), numerous email exchanges between the Court and counsel, (*see* ECF No. 42 at 2), a discovery conference, (*see* ECF No. 54), and a discovery motion, (*see* ECF Nos. 56, 71), "which required the Court to expend considerable time and resources that could have been allocated towards other matters on the Court's docket." *Alexis*, 2017 WL 1967328, at *5; *see Pagtalunan*, 291 F.3d at 642 (stating that "[i]t is incumbent upon the Court to manage its docket without being subject to routine noncompliance of litigants" and that the second factor weighed in favor of dismissal where plaintiff's petition "consumed some of the court's time that could have been devoted to other cases on the docket").

Thus, the Court finds that this factor also favors dismissal. *See In re PPA Prod. Liab. Litig.*, 460 F.3d at 1234 ("dismissal serves … the court's need to manage the docket when

a plaintiff's noncompliance has caused the action to come to a halt, thereby allowing the plaintiff, rather than the court, to control the pace of the docket").

### D. The Risk of Prejudice to the Party Seeking Sanctions Favors Dismissal

The third factor—the risk of prejudice to the party seeking sanctions—focuses on "whether the plaintiff's actions impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case." *Malone*, 833 F.2d at 131. The court must consider "whether a party's discovery violations make it impossible for a court to be confident that the parties will ever have access to true facts." *Connecticut Gen. Life Ins. Co.*, 482 F.3d at 1097. "Prejudice normally consists of loss of evidence and memory, [] it may also consist of costs or burdens of litigation[.]" *In re PPA Prod. Liab. Litig.*, 460 F.3d at 1228 (internal citations omitted). "The consideration of prejudice is an important factor in deciding a motion for a dismissal sanction and should receive more weight than the other factors." *Musgrove*, 2023 WL 4833479, at *8.

Ms. Bica's deposition and IME are central to this case because they are the sole means for Defendant to ascertain the extent of Plaintiff's cognitive impairment and obtain Plaintiff's version of events regarding the timing of the termination of the Policy and her efforts to schedule a benefit-eligibility assessment. Notably, Defendant was not able to question Plaintiff under oath at her deposition about allegedly falsifying caregiver claims, which is at the heart of its counterclaim. Defendant also was not able to have its neuropsychologist expert examine Plaintiff regarding the impact to her daily living, and the combination of effects of her alleged dementia, traumatic brain injuries, ADHD, and other medical conditions. This is critical evidence necessary for Defendant to defend against Plaintiff's claims and prosecute its counterclaim.

Ms. Bica's failure to respond to written discovery or appear for her deposition or IME "prevented [Defendant] from properly defending against the claims in h[er] complaint, spending valuable time preparing sanctions motions rather than properly preparing to file dispositive motions or for trial." *Ponce v. CalEnergy Operating Corp.*,

No. 22-cv-1808-W-LR, 2024 WL 987563, at *4 (S.D. Cal. Mar. 7, 2024). Thus, Defendant cannot fairly be required to defend against Plaintiff's claims at trial or bear the burden to prove its counterclaims at trial without the benefit of Plaintiff's deposition testimony, IME results, interrogatory responses, and document production. *See Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990) ("prejudice is palpable" where defendants failed to appear at depositions and failed to comply with court orders to produce documents). The Court is not confident that Defendant will ever have access to necessary discovery, given Ms. Bica's willful noncompliance with this Court's order and deliberate stonewalling of her own counsel's attempts to communicate. *See Velasquez*, 2025 WL 4113076, at *3 (finding prejudice and ultimately granting terminating sanctions where plaintiff, whose counsel withdrew due to lack of communication, failed to attend her deposition three times and failed to comply with order compelling written discovery responses); *Ponce*, 2024 WL 987563, at *4 (finding prejudice and ultimately granting terminating sanctions when the plaintiff, who had stopped communicating with his counsel, refused to appear for his deposition).

Here, Ms. Bica's "continued silence and refusal to produce discovery thwarts the Court's ability 'to conduct a trial with any reasonable assurance that the truth would be available.'" *Chase*, 2022 WL 2052657, at *4 (internal citation omitted). The prejudice to Defendant is clear. *See Obeng-Amponsah*, 2021 WL 2980220, at *5 (finding prejudice and ultimately granting terminating sanctions when "Plaintiff's failure to respond to Defendants' discovery requests and his failure to appear at his scheduled deposition [] have plainly interfered 'with the rightful decision of the case' by obstructing access to the facts and information necessary to resolve this action"). Thus, the Court finds that this factor also strongly favors dismissal. *See Adriana Int'l. Corp.*, 913 F.2d at 1412 ("repeated failure of [plaintiffs] to appear at scheduled depositions compounded by their continuing refusal to comply with court-ordered production of documents constitutes an interference with the rightful decision of the case" and therefore is prejudicial); *see also In re PPA Prod. Liab.*

*Litig.*, 460 F.3d at 1228 ("Failing to produce documents as ordered is considered sufficient prejudice").

### E.    The Public Policy Favoring Disposition of Cases on their Merits Neither Favors nor Disfavors Dismissal

The fourth factor, the public policy in favor of disposition of cases on their merits, typically weighs against dismissal. *Adriana Int'l Corp.*, 913 F.2d at 1412. Litigants remain responsible for moving the case towards disposition at a reasonable pace, complying with court orders and local rules, and avoiding dilatory and evasive tactics. *Morris v. Morgan Stanley & Co.*, 942 F.2d 648, 652 (9th Cir. 1991). Thus, "this factor lends little support to a party whose responsibility it is to move a case toward disposition on the merits but whose conduct impedes progress in that direction." *In re PPA Prod. Liab. Litig.*, 460 F.3d at 1228 (internal quotation marks omitted); *Allen v. Exxon Corp.* (*In re Exxon Valdez*), 102 F.3d 429, 433 (9th Cir. 1996) (noting that plaintiffs' "total refusal to provide discovery obstructed resolution of their claims on the merits"). Here, by refusing to respond, verify, or supplement her discovery responses pursuant to the Court's order, and by refusing to attend her deposition, rescheduled deposition, IME, or rescheduled IME, Plaintiff failed to meet this responsibility, which "neutralizes the negative effect of this factor." *In re PPA Prod. Liab. Litig.*, 460 F.3d at 1237.

As such, the Court finds that this factor neither favors nor disfavors dismissal. *Dr. Lokesh Tantuwaya MD, Inc. v. JetSuite, Inc.*, No. 19-cv-49-W-BLM, 2023 WL 8811819, at *8 (S.D. Cal. Dec. 19, 2023) (finding fourth factor neutralized and explaining that "Plaintiff has not made any effort to move this case toward a resolution on the merits. Plaintiff's apparent abandonment of this case overcomes the public policy and favors dismissal"); *Alexis*, 2017 WL 1967328, at *6 (finding fourth factor neutralized when Plaintiff had refused to provide discovery responses or submit to a deposition or IME).

### F.    The Availability of Less Drastic Sanctions

The fifth factor concerns the availability of less drastic alternatives. "It is appropriate to reject lesser sanctions where the court anticipates continued deceptive misconduct."

*Anheuser-Busch*, 69 F.3d at 352. The court "need not exhaust every sanction short of dismissal before finally dismissing a case, but must explore possible and meaningful alternatives." *Henderson v. Duncan*, 779 F.2d 1421, 1424 (9th Cir. 1986). To do so, courts consider three sub-factors: "(1) Did the court explicitly discuss the feasibility of less drastic sanctions and explain why alternative sanctions would be inadequate? (2) Did the court implement alternative methods of sanctioning or curing the malfeasance before ordering dismissal? (3) Did the court warn plaintiff of the possibility of dismissal before actually ordering dismissal?" *Malone*, 833 F.2d at 132; *see Adriana Int'l. Corp.*, 913 F.2d at 1412–13; *Connecticut Gen. Life Ins. Co.*, 482 F.3d at 1096 ("The sub-parts of the fifth factor are whether the court has considered lesser sanctions, whether it tried them, and whether it warned the recalcitrant party about the possibility of case-dispositive sanctions"). As with the entire five-factor test, the Ninth Circuit has emphasized that "[t]his 'test' is not mechanical. It provides the district court with a way to think about what to do, not a set of conditions precedent for sanctions or a script that the district court must follow[, i.e.,] '[t]he list of factors amounts to a way for a [] judge to think about what to do, not a series of conditions precedent before the judge can do anything.'" *Connecticut Gen. Life Ins. Co.*, 482 F.3d at 1096 (quoting *Valley Eng'rs Inc.*, 158 F.3d at 1057).

### 1.    *The Court Warned Plaintiff of the Possibility of Termination*

The Ninth Circuit "ha[s] held that an explicit warning is not always necessary." *Adriana Int'l Corp.*, 913 F.2d at 1413 (citing *Malone* for the finding that "no explicit warning necessary where harsh sanction of dismissal should not have surprised plaintiff who willfully violated court's order"). Here, however, Plaintiff's counsel has agreed that Ms. Bica "has been provided notice of the potential consequences of her conduct, including the risk of terminating sanctions, yet has continued to remain entirely unresponsive." ECF No. 68 at 3; *see also MedCision, LLC v. Ehrhardt*, No. 24-cv-1146-RS, 2025 WL 41928, at *6 (N.D. Cal. Jan. 6, 2025) ("Plaintiff here is represented by counsel and was clearly on notice of the risk of dismissal"). The Court also independently required that Ms. Bica be personally served with documents relating to the instant motion for terminating sanctions.

3:24-cv-01123-L-AHG

ECF No. 64 at 1 (order requiring Plaintiff's counsel to serve the motion, accompanying exhibits, and briefing schedule on Ms. Bica, explaining that "Defendant seeks terminating sanctions or evidentiary sanctions regarding [Ms.] Bica's [] failure to attend her deposition or Independent Medical Examination"); ECF No. 66 (order requiring Plaintiff's counsel to additionally serve Ms. Bica with all filings related to the motion for terminating sanctions via certified mail, in an abundance of caution,[8] again reiterating that "Defendant seeks terminating sanctions"). As such, Ms. Bica was personally served with the instant motion, which clearly seeks terminating sanctions, and the Court's briefing schedule, which reiterated that Defendant seeks terminating sanctions, via leaving the papers on her doorstep on January 22, 2026, (ECF No. 65), and by certified mail on January 26, 2026, (ECF No. 67). *See MedCision, LLC*, 2025 WL 41928, at *5–*6 (finding that plaintiff was on notice of the risk of dismissal, explaining that an order listing dismissal as a potential sanction, as opposed to an explicit warning of the risk of terminating sanctions, was sufficient because there is "no requirement [that] a court broadcast its intentions").

Thus, the Court finds that Plaintiff has adequately been warned of the possibility of dismissal.

### 2. The Court Used Lesser Sanctions or Alternative Means Before Considering Termination

Here, though the Court has not issued prior sanctions, it has "implement[ed] alternative methods of … curing the malfeasance[.]" *Malone*, 833 F.2d at 132. For example, the Court held a discovery conference in the matter on December 3, 2025, where it spoke candidly with counsel for both sides and "gave the parties direction on how to address Ms. Bica's lack of responsiveness," such as recommending confirm-by deadlines for the rescheduled deposition and IME, to avoid unnecessary expenses should Ms. Bica fail, again, to appear. ECF No. 54. The Court also granted Defendant's motion to compel

---

[8] Citing FED. R. CIV. P. 5(b)(2)(B)(II); FED. R. CIV. P. 5(b)(2)(C); CAL. CODE CIV. PROC. § 415.20; CAL. CODE CIV. PROC. § 415.45; CAL. CODE CIV. PROC. § 415.30.

as it related to written discovery and ordered Plaintiff to respond to, verify, and supplement her responses. ECF No. 71; *see Velasquez*, 2025 WL 4113076, at *4 ("the Court has attempted less drastic sanctions. [It] previously granted Lowe's motion to compel and ordered Plaintiff to appear for her deposition and to respond to written discovery. [] He also imposed monetary sanctions[9] on Plaintiff. [] These lesser sanctions apparently were not sufficient to ensure that Plaintiff comply with her obligations") (internal citations omitted). Despite many opportunities for compliance, Ms. Bica willfully violated the Court's order, failed to provide discovery responses, and failed to appear—multiple times—for her deposition and IME.

Thus, the Court finds that alternative methods have been used in an attempt to cure Ms. Bica's refusal to participate in the discovery process, which have been unsuccessful. *See Velasquez*, 2025 WL 4113076, at *3 ("The Ninth Circuit has explained that the district court need not exhaust every sanction short of dismissal before finally dismissing a case, but must explore possible and meaningful alternatives.") (internal quotation omitted).

### 3.      *The Feasibility of Less Drastic Sanctions*

The Court will next consider the feasibility of less drastic sanctions. Even though Defendant seeks, in the alternative to dismissal, evidentiary and monetary sanctions, (*see* ECF No. 63 at 19–21), the Court finds that these sanctions are not a realistic means to ensure Plaintiff's compliance. *Velasquez*, 2025 WL 4113076, at *4 (finding terminating sanctions warranted and lesser sanctions unfeasible when "there is no apparent justification for her failure to comply with her discovery obligations and court orders, despite being given ample opportunities to do so").

---

[9] The Court is cognizant that other courts have issued monetary sanctions before issuing terminating sanctions. Here, however, Defendant did not seek monetary sanctions with its motion to compel. *See* ECF No. 56. The Court finds that terminating sanctions should not be withheld on the basis that Defendant's counsel was reasonable in prioritizing discovery responses over attorney fees.

3:24-cv-01123-L-AHG

First, it is highly unlikely that a monetary sanction will result in Plaintiff's compliance with her discovery obligations and deter her from violating this Court's orders. *See Hammond v. Lowe's Home Centers*, No. 5:23-cv-01064-HDV-SP, 2025 WL 1039509, at *3 (C.D. Cal. Mar. 7, 2025) (finding monetary sanctions an unviable alternative to dismissal when plaintiff failed to appear for his deposition and IME multiple times). The Court notes that monetary sanctions are often ineffective in inducing non-responsive plaintiffs to comply with discovery obligations and court orders. *See Alexis*, 2017 WL 1967328, at *7 (issuing terminating sanctions when plaintiff failed to appear for deposition and IME, explaining that "[t]he monetary sanction did not impact Plaintiff's conduct because [] she repeatedly and consistently refused to participate in the litigation process even after the imposition and payment of sanctions"); *see, e.g.*, *Velasquez*, 2025 WL 4113076, at *4 (prior monetary sanctions were ineffective in persuading plaintiff to appear for her deposition or provide discovery responses); *Dr. Lokesh Tantuwaya MD, Inc.*, 2023 WL 8811819, at *8 (prior monetary sanctions were ineffective in persuading plaintiff to respond to written discovery); *Obeng-Amponsah*, 2021 WL 2980220, at *5 (prior monetary sanctions were ineffective in persuading plaintiff to appear for his deposition or provide discovery responses). As a result, the Court finds that monetary sanctions would not be appropriate in this matter.[10]

Second, the Court also finds that evidentiary sanctions would not be appropriate in this case. Plaintiff has refused to engage in any discovery or litigation since at least August 8, 2025, when she stopped communicating with her counsel. *See* ECF No. 68 at 2. As such, "any evidentiary sanction would have to be broad, excluding [or establishing] a

---

[10] The Court also notes that Plaintiff's complaint references "her limited financial abilities." ECF No. 1 at ¶ 11. Thus, a monetary sanction would especially not deter her conduct in this matter, as courts have noted similar circumstances where a non-responsive, non-wealthy party fails to pay the sanction altogether. *See, e.g.*, *Hammond*, 2025 WL 1039509, at *3 (finding lesser sanctions unviable where plaintiff repeatedly failed to appear for deposition and IME because "[p]laintiff has not paid the sanctions that were due in May 2024," ten months before the order was filed).

significant amount of evidence and essentially preventing Plaintiff from presenting her case." *Alexis*, 2017 WL 1967328, at *7 (finding that evidentiary sanctions were not feasible where plaintiff refused to participate in discovery process); *see also* ECF No. 63 at 19–21 (list of 13 facts Defendant seeks to deem established and 9 issues that Defendant seeks to preclude, many of which could potentially be case-dispositive). Additionally, "evidentiary sanctions are most appropriate when a party fails to provide one specific type of discovery," as opposed to here, where Ms. Bica has failed to provide responses to interrogatories and requests for production, and has repeatedly failed to appear for her deposition and IME. *See Dr. Lokesh Tantuwaya MD, Inc.*, 2023 WL 8811819, at *8 (finding evidentiary sanctions and jury instructions unviable when plaintiff did not provide any discovery) (internal citation omitted). Given Ms. Bica's previous failure to participate in the case or comply with the Court's order, there is no reason to believe that evidentiary sanctions will force Plaintiff to comply with further orders. *Hammond*, 2025 WL 1039509, at *3; *see also Leon*, 464 F.3d at 960–61 (affirming a dismissal sanction where an evidentiary sanction would have been "futile" and a jury instruction that created a presumption in favor of defendants still "would leave [d]efendants equally helpless to rebut any material that [p]laintiff might use to overcome the presumption"). Further, given Plaintiff's refusal to participate in discovery or comply with this Court's order, "there is no evidence indicating that Plaintiff would appear for and participate in a trial." *Alexis*, 2017 WL 1967328, at *7. As a result, the Court finds that evidentiary sanctions would not be appropriate in this matter. *See Dr. Lokesh Tantuwaya MD, Inc.*, 2023 WL 8811819, at *8 ("The Court also has considered evidentiary sanctions, but finds they are unlikely to be successful given the fact that Plaintiff has refused to participate in the discovery and litigation process"); *cf. Anheuser-Busch, Inc.*, 69 F.3d at 352 (affirming a dismissal sanction because plaintiff's repeated violations of the court's orders and concealment of documents demonstrated that "dismissal was the only real alternative," where there was no "reasonable assurance that the truth would be available").

3:24-cv-01123-L-AHG

Therefore, the Court finds that dismissal with prejudice is clearly warranted with regard to Plaintiff's complaint against Defendant. ECF No. 1. The Court, however, finds that a lesser sanction is warranted with regard to Defendant's counterclaim against Plaintiff. ECF No. 15. If a party fails to appear for her deposition, the court may issue an order "striking pleadings in whole or in part." FED. R. CIV. P. 37(d)(3) (citing FED. R. CIV. P. 37(b)(2)(A)(iii)). Likewise, a party's failure to comply with a court order may also result in stricken pleadings. FED. R. CIV. P. 37(b)(2)(A)(iii). The Court finds that striking Plaintiff's answer to Defendant's counterclaim is an adequate lesser sanction here, given the lack of information regarding Defendant's damages. After Plaintiff's answer is stricken, Defendant may move for entry of default and default judgment on its claims against Plaintiff, which the Court finds is a more equitable outcome for a non-responsive counter-defendant. The Court discussed this possible outcome with both sides during the hearing on the instant motion and was not persuaded to disregard its tentative ruling. ECF No. 78 at 7–9; *see id*. at 9 (Defendant's counsel stated that "if your Honor's more comfortable striking her answer and we need to prove up the default, again, that's not a hill I'm going to die on today"); s*ee also Pyankovska v. Abid*, No. 2:16-cv-2942-JCM-BNW, 2019 WL 6609690, at *3–*5 (D. Nev. Dec. 5, 2019) (striking defendant's answer and entering default, while requiring plaintiff to file separate default judgment briefing where there was not evidence on the record of her claimed damages, when defendant failed to respond to written discovery either at all or truthfully).

## IV.    ATTORNEY FEES

Rule 37(d)(3), regarding a party's failure to appear for their deposition, and Rule 37(b)(2)(C), regarding a party's failure to comply with a court order, permit courts to award attorney fees and costs. During the hearing, Defendant's counsel reiterated that the attorney fee request in the instant motion, (*see* ECF No. 63 at 21–22), was "an alternative request, at best[, since] our objective, here, is to put this litigation [and] these claims to bed." ECF No. 78 at 10. Since the Court has determined that terminating sanctions are appropriate, and a default will be entered as to the counterclaim, the Court declines to award attorney

fees here. *See, e.g., Velasquez*, 2025 WL 4113076, at \*4 (issuing terminating sanctions but finding award of attorney fees to be unjust, "considering the Court has terminated this case as sanctions," where plaintiff, whose counsel withdrew due to lack of communications, failed to attend her deposition three times and failed to comply with order compelling written discovery responses).

## V.    CONCLUSION AND RECOMMENDATION

The Court submits this Report and Recommendation to United States District Judge M. James Lorenz under 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1 of the United States District Court for the Southern District of California. In addition, **IT IS HEREBY RECOMMENDED** that the Court issue an Order:

(1) approving and adopting this Report and Recommendation;

(2) directing that Defendant's Motion for Sanctions (ECF No. 63) be **GRANTED IN PART**;

(3) dismissing Plaintiff's claims against Defendant (ECF No. 1) with prejudice; and

(4) striking Plaintiff's answer to Defendant's counterclaim (ECF No. 24).

**IT IS HEREBY ORDERED** that any party to this action may file written objections with the Court and serve a copy on all parties no later than **May 21, 2026**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any Reply to the Objections shall be filed with the Court and served on all parties no later than **May 28, 2026**.

The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's Order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated:  May 7, 2026

_____
Honorable Allison H. Goddard
United States Magistrate Judge

3:24-cv-01123-L-AHG